United States v. Kershner

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand twenty-one.

PRESENT:    Dennis Jacobs,
            Steven J. Menashi,
                    *Circuit Judges*
            Lewis J. Liman,
                    *District Judge.*[*]

_____

UNITED STATES OF AMERICA,

            *Appellee*,

    v.                                        No. 20-1620-cr

GARY KERSHNER,

            *Defendant-Appellant*,

SANDY   WINICK,   also   known   as   JERRY

_____

[*] Judge Lewis J. Liman of the United States District Court for the Southern District of New York, sitting by designation.

SARRANO, also known as JOHN PETER SMITH, also known as ABDIEL VERGARA, also known as ROBIN CHEER, also known as GLEN FORMAN, also known as KYLE BENDFORD, also known as STEPHEN THOMPSON, GREGORY CURRY, KOLT CURRY, also known as MICHAEL EAST, GREGORY ELLIS, JOSEPH MANFREDONIA, also known as MAURIZIO,

        *Defendants.*[†]

_____

| | |
|---|---|
| *For Plaintiff-Appellant*: | ROBERT POLLACK, Assistant United States Attorney (David C. James, Mark E Bini, Assistant United States Attorneys, *on the brief*), *for* Breon S. Peace, United States Attorney, Eastern District of New York, Brooklyn, New York |
| *For Defendant-Appellant*: | SYDNEY SPINNER (Steve Zissou, *on the brief*), Steve Zissou & Associates, Bayside, New York |

Appeal from a judgment of conviction by the United States District Court for the Eastern District of New York (Vitaliano, J.).

---

[†] The Clerk of Court is directed to amend the caption as set forth above.

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the grant of summary judgment by the district court is **AFFIRMED**.

Defendant-Appellant Gary Kershner appeals the judgment of conviction entered by the district court on May 6, 2020. Kershner was convicted of five counts of wire fraud and securities fraud and two counts of providing false statements to the FBI. Kershner was found guilty of participating in a "pump and dump" stock trading scheme in which he artificially inflated the value of penny stocks to be sold later at a profit. He was sentenced to concurrent terms of thirty months in prison on each count, a special assessment of $600, restitution in the amount of $873,473.06, and two years of supervised release.

On appeal, Kershner argues that (1) his counsel was constitutionally ineffective, (2) his counts of providing false statements to the FBI were improperly joined with other charges in the indictment, and (3) he was denied a fair trial by the admission of improper evidence. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

3

# I

The record does not support the conclusion that Kershner's counsel was constitutionally deficient. Under *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny, a criminal defendant must clear two bars to establish ineffective assistance of counsel. First, the defendant must establish deficient performance by showing that, "in light of all the circumstances, the acts or omissions of trial counsel were outside the wide range of professionally competent assistance." *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020). Second, the defendant must establish prejudice by showing that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

Kershner cannot meet either bar. First, his attorney's representation did not fall below an objective standard of reasonableness. Decisions about which witnesses to call are typically matters of attorney strategy, and the defendant therefore "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Kershner does not overcome that presumption here. He speculates that witnesses his trial counsel declined to call would have offered testimony helpful

4

to his case, but—as the district court properly determined in denying Kershner's motion for a new trial—he has not shown that those witnesses would necessarily have done so or that the witnesses would not have incriminated him further in cross-examination. Under these circumstances, Kershner has not established that his attorney's representation was unreasonable.[1]

Second, even if Kershner could show that his attorney's representation was deficient, he cannot demonstrate that the representation prejudiced him. The evidence against Kershner was substantial and included hours of recorded telephone calls with co-conspirators and testimony by two cooperating witnesses. The jury heard Kershner in recorded conversations describing his fraudulent activities—such as forging signatures, creating fraudulent documents, and issuing false press releases—that furthered the pump-and-dump scheme. Given this

---

[1] Similarly, Kershner's allegations that his attorney did not adequately prepare for trial are insufficient to establish ineffective assistance. Kershner acknowledges that his attorney met with him before trial but claims that the attorney failed to investigate exculpatory witnesses due to cost, and he objects that if his attorney had met with him more, he might have known to call certain witnesses or might have more aggressively cross-examined the government's case. But Kershner provides no support for his claim that counsel chose not to act due to cost, and as the district court noted, this argument is highly speculative. By Kershner's own admission, this was a "complex case." Appellant's Br. at 17. The attorney might have decided to spend more time with the evidence or otherwise directed efforts and funds toward a different strategy than Kershner now advocates in retrospect.

evidence, Kershner cannot establish that his trial attorney's conduct altered the outcome of his case.

Indeed, as the district court noted, even assuming Kershner is correct about the testimony that other witnesses would have offered, such testimony would not be exculpatory. Kershner argues that witnesses would have testified that the relevant companies were legitimate businesses. But, as the district court explained, "evidence of a *bona fide* business enterprise" is not "incompatible with a finding of fraud" with respect to "Kershner's role in the charged misrepresentations in the trading in securities of these companies." Gov't App'x 31-32.

## II

Kershner argues on appeal that his counts were improperly joined. But he did not raise the issue of misjoinder or move for severance in the district court. Even after he was represented by new counsel, Kershner did not argue that the failure to raise the issue should be excused for "good cause." Fed. R. Crim. P. 12(c)(3). Accordingly, his claim of improper joinder is waived. Even if it were not, Kershner's false statements to the FBI, made to cover up the pump-and-dump scheme, were also "connected with or constitute[d] parts of a common scheme or

6

plan" or were part of "the same series of acts or transactions" as the underlying fraud, and joinder was warranted. *See generally* Fed. R. Crim. P. 8.

Kershner's claim of retroactive misjoinder is meritless. As our court has explained, "'Retroactive misjoinder' arises where joinder of multiple counts was proper initially, but later developments—such as a district court's dismissal of some counts for lack of evidence—render the initial joinder improper." *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994). In this case, no such developments occurred.

**III**

Kershner argues that the district court abused its discretion by improperly admitting evidence. In *United States v. Winick*—an appeal from the trial of Kershner's co-conspirator—our court held that the admission of testimony regarding his co-conspirator's role in the scheme and the structure of one of the companies involved in the scheme was improper. 792 F. App'x 91, 93 (2d Cir. 2019). But our court concluded that the erroneous admission of that testimony was harmless, given the substantial evidence of the co-conspirator's guilt. *Id*. at 94. The evidence was also harmless with respect to Kershner. The government "offered substantial admissible evidence" supporting Kershner's conviction. *Id*. at 95. Some

of the improper testimony—concerning the operations of Moneyline Brokers—was not even relevant to Kershner. We conclude again that the "inadmissible portions" of testimony were "cumulative of other properly admitted evidence," *id.*, and it is "highly probable that the error did not affect the verdict," *United States v. Dukagjini*, 326 F.3d 45, 61 (2d Cir. 2003) (internal quotation marks omitted).

\*　　\*　　\*

We have considered Kershner's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court